IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SAMUEL KAUFFMAN, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 25-6806-KSM |
| CITY OF PHILADELPHIA, et al., | |
| Defendants. | |

**MEMORANDUM**

**Marston, J.**                                                             **April 14, 2026**

Absence of custom is not custom.[1]  Plaintiff Samuel Kauffman alleges he was violently attacked by two fellow inmates at the Philadelphia Detention Center ("PDC") in December 2023. In response, he brings this civil rights complaint against the City of Philadelphia d/b/a PDC ("the City") and two correctional officers and one lieutenant at the PDC.[2]  (Doc. No. 33 at 1–3.) Plaintiff has alleged three Counts, each asserting claims under 42 U.S.C. § 1983.  Counts One and Three allege that Correctional Officers Davis Lucas and Robert Diaz, along with Lieutenant Maria Diaz (collectively, the "Officer Defendants"), failed to protect Plaintiff and were deliberately indifferent to Plaintiff's injuries stemming from the assault.  (*Id.* at 7–9.)  Count Two alleges that the City is also liable under § 1983 under the doctrine espoused in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (*Id.* at 7–8.)

---

[1] *See, e.g.*, Carl Sagan & Ann Druyan, *The Demon-Haunted World: Science as a Candle in the Dark*, 200 (Headline Book Publishing 1997) ("Absence of evidence is not evidence of absence.").

[2] Plaintiff had previously named six other correctional officers as Defendants in this action, but on April 2, 2026, stipulated to their dismissal.  (*See* Doc. No. 38.)  But this stipulation is immaterial to the City's instant motion as all of Plaintiff's underlying Counts remain.  (*See generally* Doc. No. 33.)

The City has moved to dismiss Count Two with prejudice, arguing that Plaintiff has not pleaded an underlying § 1983 claim, and even if he has, he has not pleaded a *Monell* claim. (Doc. No. 22.)  Plaintiff opposes the City's motion, and in the alternative, seeks leave to amend to cure any pleading deficiency the Court finds.  (Doc. No. 26.)  For the reasons discussed below, the Court will grant the City's Motion to Dismiss but will give Plaintiff leave to amend his *Monell* claim (Count Two).

## I.      FACTUAL BACKGROUND

Taking the allegations in the Second Amended Complaint ("SAC") as true,[3] the relevant facts are as follows:

In early December 2023, Plaintiff was incarcerated at the PDC.  (Doc. No. 33 at 5.)  "On or about December 5, 2023, two inmates entered Plaintiff's cell unimpeded and violently assaulted him, striking him repeatedly in the head and face."  (*Id.*)  As a result, Plaintiff suffered various injuries, including a fractured face, loss of teeth, and issues with his vision and hearing. (*Id.*)  After the assault, the Officer Defendants photographed Plaintiff, his cell, and his cell door. (*Id.*)  None of the Officer Defendants provided Plaintiff medical attention, and Plaintiff was not provided medical care more broadly until "approximately two days later"—and even then, only after Plaintiff's wife called the PDC demanding it.  (*Id.*)

The assailants were able to gain access to Plaintiff's cell because it, and the other cells in Plaintiff's housing unit, had "broken, malfunctioning, or non-locking cell doors."  (*Id.*)  Such cell door issues existed at the PDC "long before Plaintiff's assault."  (*Id.* at 6.)  And Plaintiff alleges the City has long been aware of the risk of such inmate-on-inmate violence and such operational

---

[3] "The District Court, in deciding a motion under Federal Rule of Civil Procedure 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

deficiencies from prior federal litigation brought against the City. (*Id.* (citing *Ellis v. City of Philadelphia*, No. 18cv5046 (E.D. Pa.) and "long-running federal conditions-of-confinement litigation involving Philadelphia prisons").) Though Plaintiff acknowledges that "such litigation did not involve this specific assault or defective cell doors." (*Id.*) As a result, Plaintiff brings claims for failure to protect and deliberate indifference against the Officer Defendants and alleges the City should be held liable under municipal liability. (*Id.* at 7–9.)

## II.    PROCEDURAL HISTORY

On December 3, 2025, Plaintiff filed his original complaint in this action. The original complaint named the City; Blanche Carney, the former Commissioner of the Philadelphia Department of Prisons; Michael Resnick, the current Commissioner of the Philadelphia Department of Prisons; and between one and twenty John Doe correctional officer defendants. (*See* Doc. No. 2.) On January 8, 2026, the City, alongside Messrs. Carney and Resnick, filed its first motion to dismiss the claims against them. (Doc. No. 10.) The next day, Plaintiff stipulated to the dismissal of the claims brought against Messrs. Carney and Resnick. (Doc. No. 11.) Then, after the Court granted Plaintiff a weeklong extension for his response (Doc. No. 14 at 2 n.1), on January 29, 2026, Plaintiff filed his First Amended Complaint ("FAC"), which mooted the City's first motion to dismiss. (*See* Doc. Nos. 16–17, 20.)

On February 12, 2026, the City filed its second motion to dismiss the *Monell* claim against it. (Doc. No. 22.) On February 20, 2026, Plaintiff filed a motion (1) to compel information relating to the Doe Defendants and (2) for an extension of time to respond to the City's second motion to dismiss or further amend his FAC. (Doc. No. 23.) After a conference that day (Doc. No. 24), the Court denied Plaintiff's motion to compel and to extend the time to respond to the City's second motion to dismiss, but granted him additional time to amend his

FAC.  (Doc. No. 25.)  But that Order provided Plaintiff additional time *only* "to amend his [FAC] to replace John Doe Defendant names" with the names of the proper correctional officer defendants.  (*Id.* at 1.)  On February 26, 2026, Plaintiff filed his response in opposition to the City's second motion to dismiss.  (Doc. No. 26.)  And on March 10, 2026, Plaintiff filed his SAC.  (Doc. No. 33.)

So, while the SAC was filed after the parties' briefing on the City's second motion to dismiss, the prior briefing is not moot because the only substantive changes between the FAC and the SAC are the addition of the names of the Officer Defendants.  (*See* Doc. No. 33-1); *see also MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 539 n.1 (D.N.J. 2012) ("The filing of an amended pleading does not render a motion to dismiss moot.  While the Court could order [the City] to file a supplemental motion to dismiss incorporating by reference all prior arguments, . . . there is no benefit in forcing such a formality in this instance.  Instead, the court simply may consider the motion as being addressed to the amended pleading." (internal citations and quotation marks omitted)).  Thus, as the matter is fully briefed, it is ripe for resolution.

III.    **LEGAL STANDARD**

In deciding a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Accordingly, a complaint that "pleads facts that are 'merely consistent with' a

defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 at 555.  And a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  Although the Court must accept as true the allegations in the complaint and all reasonable inferences therefrom, *Phillips*, 515 F.3d at 228, the Court is not "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (cleaned up)).

IV.    **DISCUSSION**

The City makes two arguments in support of its motion to dismiss: (1) that the SAC does not sufficiently plead any underlying § 1983 claim against the Officer Defendants[4], so there cannot be *Monell* liability as to the City and (2) even if Plaintiff does sufficiently plead § 1983 claims against the Officer Defendants, he has still not pleaded facts to implicate *Monell*.  (Doc. No. 22 at 6–11.)  Plaintiff, predictably, disagrees; he argues that not only has he sufficiently pleaded both a failure to protect and a deliberate indifference claim as against the Officer Defendants, but also that those claims are sufficiently tied to customs and policies from the City. (Doc. No. 26 at 9–13.)

---

[4] The Court also notes that the Officer Defendants—who are represented by the same counsel as the City, have answered Plaintiff's SAC (Doc. No. 37), indicating they do not share the City's position.

As discussed below, both the City and Plaintiff are correct, in part.  Plaintiff has sufficiently pleaded his underlying § 1983 claims regarding the Officer Defendants but has not pleaded facts to show *Monell* liability for the City.  The Court addresses each in turn.

### A.      *Plaintiff's § 1983 Claims Are Sufficient at This Stage*

Plaintiff brings two § 1983 claims against the Officer Defendants in this action, one for failure to protect Plaintiff from being assaulted and one for deliberate indifference to Plaintiff's medical needs after his assault.  (Doc. No. 33 at 7–8.)  Regarding failure to protect, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  After all, "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  *Farmer*, 511 U.S. at 834 (quotation marks omitted).  To state a plausible failure to protect claim, a plaintiff must allege that:  (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.  *See Hamilton*, 117 F.3d at 746.  Deliberate indifference is a subjective standard.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).  Plaintiff must allege that the Officer Defendants "knew or were aware of and disregarded an excessive risk to [his] health or safety."  *Id*. at 135.  "[I]t is not sufficient that the official should have been aware" of the excessive risk.  *Id*. at 133.  But at the same time, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk."  *Id.*  Similarly, "to prove deliberate indifference under the Eighth Amendment, a plaintiff must establish that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need;

and (3) the deliberate indifference caused harm to the plaintiff." *Williams v. Sec'y Pa. Dep't of Corr.*, 117 F.4th 503, 514 n.58 (3d Cir. 2024), *cert. denied sub nom. Wetzel v. Williams*, 146 S. Ct. 91 (2025) (quoting *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023)).

The City's argument against Plaintiff's § 1983 claims is a threshold one. If there is no underlying constitutional violation, there can be no *Monell* liability. *See Mulholland v. County of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no [§ 1983] violation in the first place, there can be no derivative municipal claim."). The City argues that "Plaintiff fails to allege any facts that demonstrate he posed an excessive risk of harm by being placed into his cell."[5] (Doc. No. 22 at 7–8.) But this argument glosses over Plaintiff's allegations that Philadelphia Department of Prisons "facilities, including the [PDC], were plagued by chronic security failures, including broken cell doors, understaffing, inadequate supervision, and unmonitored inmate movement" and these failures were seen in Plaintiff's housing unit the night he was assaulted. (Doc. No. 33 at 5–6.) And Plaintiff has alleged that all Officer Defendants observed his injuries either immediately after the assault, or in the days before he was eventually transferred to medical. (*Id.* at 5, 7.) So, taking all factual allegations as true and drawing all inferences in favor of Plaintiff, he has pleaded sufficient facts for his § 1983

---

[5] Plaintiff argues in his brief that the City's motion "does not specifically address Plaintiff's Eighth Amendment failure to provide medical care claim. Therefore, [the City has] forfeited [its] opportunity to move to dismiss that claim." (Doc. No. 26 at 11.) But Plaintiff misreads not only the City's motion but also appears to misunderstand his own claim. The SAC does not allege a failure to provide medical care claim, but a deliberate indifference to medical needs claim. (*See* Doc. No. 33 at 8–9.) The City has argued that Plaintiff has not shown the Officer Defendants were deliberately indifferent under the Eighth Amendment (Doc. No. 22 at 7); that is sufficient to place the issue before the Court.

Though, to be sure, the City's argument is less than clear on this point, given its focus only on failure to protect. (*See id.*) But considering Plaintiff's brief confusingly identifies "Geo Corrections" as a defendant in this action and cites to the standard for supplemental jurisdiction of state law claims when he has not pleaded any (Doc. No. 26 at 8, 13), such hyper-parsing of either party's briefing does not appear to be a productive use of time or have any bearing on the ultimate outcome of the instant motion.

failure to protect and deliberate indifference claims.  *See Hamilton*, 117 F.3d at 746; *Beers-Capitol*, 256 F.3d at 133; *Williams*, 117 F.4th at 514 n.58.

### B.      *Plaintiff's Monell Claims Are Insufficiently Pleaded*

The Court's finding above is but a short reprieve for Plaintiff, as we find that even though he sufficiently pleaded § 1983 claims against the Officer Defendants, he has not sufficiently pleaded a *Monell* claim against the City.

To survive a motion to dismiss a claim premised on municipal policy or custom, a plaintiff must "identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997) (explaining that the policy or custom must be the "moving force" behind the plaintiff's alleged injury).  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Mulholland*, 706 F.3d at 237 (quotation marks omitted).  And a "course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law."  *Id.* (quotation marks omitted); *see also McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009) (explaining that to state a municipal custom, the complaint must "specify what exactly that custom or policy was" and demonstrate "knowledge and acquiescence by the decisionmaker").

Plaintiff has not done enough here to survive a motion to dismiss.  The SAC points to no *specific* custom or policy by the City that directly led to the prison conditions that caused his assault.  (*See generally* Doc. No. 33.)  Plaintiff claims that on the night of his assault in December 2023, and at various other points, the PDC has been "plagued by chronic security

8

failures, including broken cell doors." (*Id.* at 6.)  But those are results, not customs or policies. Such failures could just as easily be attributed to understaffing or underfunding, not a deliberate policy choice by the City.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*).  And the City's purported failure to address such issues cannot, circularly, be used as evidence that it is their custom, policy, or practice to do so.  *See Guzman v. City of Newark*, No. 20cv6276, 2022 WL 1044957, at *9 (D.N.J. Apr. 7, 2022) ("Plaintiff has not adequately pled his Monell claims.  First, he has not plausibly alleged the existence of a policy or custom that resulted in his alleged constitutional issues.  The two instances in which the City allegedly wrongfully initiated criminal proceedings against Plaintiff do not give rise to a plausible claim that the City had a policy or custom of initiating and/or continuing criminal proceeding without evidence or in the face of exculpatory evidence.  Nor does Plaintiff provide any other specific factual allegations supporting the existence of such a policy or custom.").  Nor has Plaintiff pointed to any custom or practice of the City to deliberately fail to provide medical care to inmates.  In sum, Plaintiff has the symptom, but fails to plead the cause.

And to the extent the SAC cites purported longstanding practices by the City, such statements are either conclusory, vague, or inapplicable.  Plaintiff's brief cites only two specific aspects of the SAC which support his *Monell* allegations: (1) his pleading that "on information and belief," the PDC has had these cell door and security issues for a long period of time and (2) a separate civil rights lawsuit filed in this Court, *Ellis v. City of Philadelphia*, No. 18cv5046 (E.D. Pa.), which he claims put the City "on notice of the risk of inmate-on-inmate assaults occurring inside housing-unit cells following failures in cell access control and housing-unit supervision."  (Doc. No. 33 at 6.)  As to Plaintiff's first example, as discussed above, such an

9

allegation is too vague and conclusory to be the basis for a custom by the City. And as to

Plaintiff's second example, as the SAC itself concedes, "such litigation did not involve . . .

defective cell doors."[6] (Doc. No. 33 at 6.) The City cannot fairly then be said to be on notice of

this specific longstanding issue and Plaintiff has not shown there is a "direct causal link between

a municipal policy or custom and the alleged constitutional deprivation to ground municipal

liability." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (cleaned up); *cf.*

*Garcia v. County of Bucks*, No. 17cv3381, 2018 WL 3585086, at *7 (E.D. Pa. July 25, 2018)

(denying motion to dismiss *Monell* claims because "Plaintiff has specified the two offending

policies. . . . Moreover, there can be no doubt that the decision to house fifteen inmates in a

single room for two weeks with a single toilet was not isolated happenstance but a deliberate

decision by a Bucks County policymaker. Just as Plaintiff's repeated top bunk assignments, both

before and after his fall and in spite of several requests, demonstrate that his top bunk assignment

was not an anomaly, but the norm").[7]

*          *          *

In short, Plaintiff's *Monell* claim is the exact type of claim that *Twombly* and *Iqbal*

disallow: a claim based purely on inference, not specific allegations. Plaintiff has made

conclusory statements which coincide with the elements of a *Monell* claim, but he has not

---

[6] The Court also notes that in *Ellis*, the plaintiff alleged that the correctional officers there improperly locked him inside his cell with his attacker, and he could not escape; not, as here, that the cell door was defective. *See Ellis*, No. 18cv5046, Doc. No. 1 at 5–6. And, while the City did not move to dismiss the *Monell* claim against it in that action, the Court did grant summary judgment for the City on all claims, including *Monell*. *See id.*, Doc. No. 20.

[7] While Plaintiff cites to multiple cases for support for his *Monell* claim, all are inapplicable here for procedural or factual reasons. (*See* Doc. No. 26 at 12–13 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) (a summary judgment case); *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996) (same); *Bielevicz v. Dubinon*, 915 F.2d 845 (3d Cir. 1990) (a judgment as a matter of law case); *Hailey v. City of Camden*, 631 F. Supp. 2d 528 (D.N.J. 2009) (same); and *Est. of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) (holding municipality could be liable for failing to take precautions in failure to train context, not failure to protect or deliberate indifference to medical needs)).)

supported his claim with sufficient factual matter to show the existence of a plausible claim.  He has certainly not specified what exactly the City's customs or policies were, as demanded by the Court of Appeals for the Third Circuit.  *See McTernan*, 564 F.3d at 658–59.  Nor has he credibly tied any potential custom or practice to a decisionmaker ***through facts***.  At present, all Plaintiff has pointed to is one other case in this District, *Ellis*, and vague allusions to "long-running federal conditions-of-confinement litigation involving Philadelphia prisons."  (Doc. No. 33 at 6.)  This will not suffice.

### C.        *The Court will Grant Plaintiff Leave to Amend*

While the Court agrees with the City that Plaintiff's SAC is insufficient as to the *Monell* claim, Plaintiff will be given leave to amend this specific claim one additional time.

The City's motion to dismiss asks this Court to dismiss with prejudice, but it makes no argument why Plaintiff should not be given leave to amend to cure the deficiencies identified by the Court.  (*See generally* Doc. No. 22.)  Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  The [only] grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  Here, even though Plaintiff has had two other opportunities to amend, only one—the FAC—involved a substantive change to the complaint and at that point in the litigation Plaintiff was still unaware of the names of the Officer Defendants.  (*Compare* Doc. No. 2, *with* Doc. Nos. 16–17, 33.)  Therefore, as the Court "should freely give leave when justice so requires," it will give Plaintiff one more opportunity to, if he wishes and can, ***in good faith***, amend the SAC.  Though, such amendment may only be as to his *Monell* claim against the City.

## V.    CONCLUSION

Plaintiff has successfully pleaded Counts One and Three, that there was a constitutional violation of his rights in December 2023, as to the PDC by the Officer Defendants.  But he has not tied that violation to any policy, custom, or practice of the City; so, the Court must dismiss Count Two at this time.  But Plaintiff will be given the opportunity to submit a third amended complaint and may reassert his claims against the City under § 1983 if he can in good faith cure the deficiencies identified in this Memorandum.

An appropriate order follows.